**The below described is SIGNED.**

**Dated: August 02, 2010**

_____
**JOEL T. MARKER
U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>FIRSTLINE SECURITY, INC.,<br><br>                        Debtor. | Bankruptcy Case No. 08-20418<br><br>Chapter 11 |
| FIRSTLINE SECURITY, INC.,<br><br>                        Plaintiff,<br><br>v.<br><br>ADT SECURITY SERVICES, INC.,<br><br>                        Defendant. | Adversary Proceeding No. 09-2388<br><br>Judge Joel T. Marker |

**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

      The matters before the Court are Firstline's Motion and ADT's Cross-Motion for Summary Judgment on the Second Cause of Action in the Complaint as to whether the UCC is applicable to ADT's purchase of certain Firstline accounts.[1] The Court has carefully reviewed

---

[1] If so, the Court has already determined in connection with the First Cause of Action that the UCC-1 financing statement filed by ADT was "seriously misleading" as a matter of law. And although the contracts at issue refer to themselves as being governed by Colorado law, the parties agree that Utah law governs the Court's determination (and Colorado law does not appear to be materially different in any event).

the Cross-Motions, as well as all supporting memoranda, responses, replies, and declarations. The Court has also carefully considered the parties' oral arguments.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c), incorporated into this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, makes summary judgment appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]  In applying this standard, the Court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."[3]

## II. FACTS

The material facts set forth by the parties, although minimal, are undisputed.  Firstline was in the business of selling alarm systems to customers.  In connection with the sale of a system, a customer typically committed under written contract to pay an activation/installation fee of approximately $99 and $45/month for 36 months thereafter which generated an Alarm Account.  Firstline became an authorized dealer for ADT in February 2005 pursuant to the terms of a Dealer Agreement, and ADT purchased 23,109 Alarm Accounts pursuant to the Dealer Agreement in 2005-07.  ADT purchased another 10,043 Alarm Accounts pursuant to six separate Alarm Purchase Agreements, and Firstline concedes that the UCC does not apply to ADT's account purchases under these Alarm Purchase Agreements.  It also appears undisputed that

---

[2] FED. R. CIV. P. 56(c).
[3] *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kansas City, Kan.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (internal quotes omitted).

ADT, at least pursuant to the Dealer Monitoring Agreement, has and continues to provide monitoring services to certain Firstline customers.[4]

### III. DISCUSSION

Thus, as framed by the parties, the only remaining dispute is whether the UCC applies to ADT's purchase of Alarm Accounts under the Dealer Agreement. More specifically, the parties disagree over whether the language of § 8.4.1 of the Dealer Agreement (in particular its use of the word "right" rather than "obligation") and § 3 of the incorporated Dealer Monitoring Agreement brings ADT's account purchases within the UCC exception for "an assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract."[5]

"The underlying purpose in construing or interpreting contractual provisions is to determine the intentions of the parties. Absent ambiguity, [the Court looks] only to the language of the contract to determine its meaning and the intent of the contracting parties."[6] Such contract interpretation in the absence of ambiguity is a question of law,[7] and "[t]he party asserting that a transaction does not come within any provisions of the UCC or falls within a statutory exception to the UCC bears the burden of so proving."[8]

The purpose of the assignment exception is to exclude transactions from the UCC that are not really financing transactions.[9] "When the assignee of the right to be paid money under a

---

[4] Paragraph 7 of the Mark V. Grush Declaration filed in support of ADT's Motion to Dismiss and referenced in ADT's Reply in support of its Cross-Motion says that "[f]ollowing the execution of the [Dealer] Monitoring Agreement, ADT began to provide, and still provides, monitoring services to certain of the customers generated by Firstline." Firstline did not challenge this factual averment in its Surreply.
[5] U.C.A. § 70A-9a-109(4)(f).
[6] *Bichler v. DEI Systems, Inc.*, 220 P.3d 1203, 1207 (Utah 2009) (internal quotes and citations omitted).
[7] *Foster v. Montgomery College of Utah*, 82 P.3d 191, 194 (Utah Ct. App. 2003).
[8] *Marandola v. Marandola Mech., Inc.*, No. PB 03-5949, 2004 WL 1542229 at *5 (Sup. Ct. R.I. June 29, 2004).
[9] "The third exclusion is the transfer to an assignee who is also to render performance under the contract transferred." 9A William D. Hawkland *et al.*, Uniform Commercial Code Series § 9-109:11 (June 2010) (distinguishing the broader current version of the exception from prior versions that required an assignor's complete

3

contract is also the delegatee of contract performance, he is, in large measure, taking over the business of his assignor. Viewed in this manner, it becomes clear that the assignee/delegatee is in a position similar to that of the buyer of a business who obtains accounts of the seller as an incident of the sale. The chief difference, and one not justifying inclusion within Article 9, is that the assignor remains liable for a defective performance."[10]

In light of the documents that the parties have placed before the Court to interpret, the Court concludes as a matter of law that ADT is obligated under the Alarm Account contracts and that the UCC exception in U.C.A. § 70A-9a-109(4)(f) applies.

First, Alarm Accounts are defined in § 1.2 of the Dealer Agreement as "all customer accounts with respect to which Alarm Services Agreements have been executed between customers and [Firstline] and includes all information and rights relating to such customers including, without limitation, all files and related Alarm Services Agreements and rights to receive all revenues and payments as provided in the Alarm Services Agreements." In turn, Alarm Services Agreements are defined in § 1.3 as "the standard form customer agreement and related attachments, designated, from time to time, by ADT for use by [Firstline], for the installation of Electronic Event Detection Devices and providing of Electronic Event Detection Services upon a customer's premises." These definitions inform the interpretation of § 8.4.1, which provides that "[a]ll of [Firstline's] rights in Alarm Services Agreements, including (i) the right to receive payments and revenue therefrom and (ii) the right to perform services thereunder, shall vest in ADT upon the Closing Date for all Purchased Alarm Accounts." Given the other

---

extrication from the underlying contract transactions). The Restatement (Second) of Contracts § 318 also provides that "[u]nless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor." 29 Williston on Contracts § 74:27 (4th ed.) (May 2010).
[10] *Marandola*, 2004 WL 1542229 at *6 (*quoting* 9A William D. Hawkland *et al.*, Uniform Commercial Code Series § 9-104:7 (2003)).

aspects of the accounts being purchased by ADT in addition to the right to payment, the underlying agreements are more in the nature of executory contracts than mere accounts receivable and the Dealer Agreement's terms support the position that ADT assumed Firstline's obligations to service the underlying agreements.[11]

Second, Firstline focuses on the use of the word "right" instead of "obligation" (which is used in a different context earlier in § 8.4.1) but has offered no cogent explanation for what "the right to perform services" might mean. The Court can only reasonably conclude, particularly when the "right to perform services" is immediately preceded by ADT's right to receive payments on the purchased accounts, that the "right to perform services" indicates ADT's assumed duty to service the underlying contracts and to receive payment for those services. The Court agrees with Firstline that an assignment of rights is distinct from a delegation of duties and that an assignee must indicate its intent to assume an assignor's contractual duties; however, no "magic words" are required to indicate this intent and interpretive disagreement between the parties is not *per se* a basis for finding ambiguity in a contract.[12]

Third, the Court notes that other provisions of the Dealer Agreement (such as §§ 2.1 and 5.3) define the scope of Firstline's exclusive authorization and provide that ADT may hire Firstline as a subcontractor to perform maintenance and repair services on Electronic Event Detection Devices, which further supports the view that ADT has an underlying duty to service the Alarm Accounts and Alarm Services Agreements.

---

[11] Although the Court does not reference the language of the six separate Alarm Purchase Agreements between Firstline and ADT to inform its analysis of the language of the Dealer Agreement, Firstline does so in its combined Response/Reply memorandum by attempting to contrast § 8.4.1 of the Dealer Agreement with § 4(c) of the Alarm Purchase Agreements. The Court has reviewed the language of the Alarm Purchase Agreements and finds no real difference except for use of the word "obligation" instead of "right."

[12] *Winegar v. Froerer Corp.*, 813 P.2d 104, 107-08 (Utah 1991); *Novell, Inc. v. The Canopy Group, Inc.*, 92 P.3d 768, 775 (Utah Ct. App. 2004) ("The test for determining facial ambiguity in a contract, however, is not whether several definitions of a word exist, but whether the term, *in context of the contract*, 'is capable of more than one reasonable interpretation.'") (emphasis in original). The Court also does not believe that ADT's entry into the Collateral Assignment, Consent and Grant of Lien (Exhibit D to the Dealer Agreement) affects the analysis.

Finally, § 2.3 of the Dealer Agreement incorporates the terms of the parties' Dealer Monitoring Agreement, which in § 3 sets forth ADT's duty to provide monitoring services for Firstline Subscribers. Although the Court understands Firstline's argument in its Surreply and the additional language of the Dealer Monitoring Agreement is not critical to the Court's conclusion on the proper contract interpretation, the Court finds that this language also supports ADT's view of the interpretation of the overall Dealer Agreement.

## IV. CONCLUSION

Firstline's Motion is accordingly DENIED, ADT's Cross-Motion is GRANTED, and the Second Cause of Action is DISMISSED. ADT is directed to prepare an appropriate judgment for the Court to execute.

ORDER SIGNED

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** will be effected through the Bankruptcy Noticing Center to each party listed below.

Adam Affleck
Charles Perschon
Prince Yeates & Geldzahler
City Center 1, Ste. 900
175 East 400 South
Salt Lake City, UT 84111
 *Counsel for Plaintiff*

Ronald Crouch
McGuireWoods LLP
625 Liberty Avenue
Dominion Tower, 23rd Floor
Pittsburgh, PA 15222-3142
 *Counsel for Defendant*

Adelaide Maudsley
Chapman and Cutler LLP
201 South Main Street, Suite 2000
Salt Lake City, UT 84111
 *Local Counsel for Defendant*

J. Thomas Beckett
Parsons Behle & Latimer
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT 84145-0898
 *Counsel for the Unsecured Creditors' Committee*